UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRUCE MEDEIROS, ) | |
| ) | |
| Petitioner, ) | Civil Action No. |
| ) | 20-10067-FDS |
| v. ) | |
| ) | |
| KRISTIE LADOUCEUR, ) | |
| ) | |
| Respondent. ) | |

### FURTHER MEMORANDUM AND ORDER ON
### PETITION FOR WRIT OF HABEAS CORPUS

**SAYLOR, C.J.**

This is a petition for a writ of habeas corpus by a prisoner in state custody. Petitioner Bruce Medeiros is an inmate at the North Central Correctional Institution in Gardner, Massachusetts.[1] He is serving a sentence of ten to fourteen years of imprisonment as a result of violating his probation and being resentenced on the underlying conviction for dissemination of child pornography.

On January 13, 2020, Medeiros filed this petition pursuant to 28 U.S.C. § 2254. He is proceeding *pro se*. The petition as amended alleges (1) that the terms of his probation were constitutionally inadequate for failing to provide him with adequate notice that his conduct was prohibited and (2) that the trial judge abused her discretion in finding that he violated the terms of his probation.

---

[1] Petitioner's name is misspelled as "Bruce Medieros" and defendant's name is misspelled as "Kristie Ladoucher" in the petition and docket. (Resp. Mem. at 1).

For the following reasons, the petition for a writ of habeas corpus will be denied.

**I.      Background**

The following facts are taken primarily from the opinion of the Massachusetts Appeals Court in *Commonwealth v. Medeiros*, 95 Mass. App. Ct. 132 (2019), *review denied*, 482 Mass. 1105 (2019).

In 2001, Bruce Medeiros was arrested for displaying child pornography and exposing himself to two girls, aged nine and eleven, while they were walking home from school. *Id.* at 132-33. As a result, he pleaded guilty in Bristol County Superior Court in 2002 to two counts of dissemination of matter harmful to a minor in violation of Mass. Gen. Laws ch. 272, § 28; two counts of dissemination of child pornography in violation of Mass. Gen. Laws ch. 272, § 29B(a); and three counts of possession of child pornography in violation of Mass. Gen. Laws ch. 272, § 29C. *Id.* at 133. He received concurrent terms of four to five years in state prison on his convictions of dissemination of matter harmful to a minor and possession of child pornography. *Id.* Medeiros also received a five-year probationary term on his convictions of dissemination of child pornography, which was set to begin after his release from state prison. *Id.* One of the conditions of his probation was to have "no involvement with minors without responsible adult supervision." *Id.*

After completing his Massachusetts prison term in 2006, Medeiros was extradited to Florida. *Id.* His 2002 convictions had violated an existing probation order in Florida arising from another incident where he had exposed himself to children. *Id.* He returned to Massachusetts in December 2012 to begin his five-year probationary term. *Id.*

On December 5, 2013, about a year into his probation term, an off-duty New Bedford Police Sergeant, Joshua Fernandes, observed Medeiros walk onto the property of a Catholic grammar school and attempt to enter the school building. *Id.* The sergeant watched Medeiros

enter the school yard and approach a ground-level door in the back of the school. *Id.* The door was secured by a keypad locking mechanism, equipped with an intercom and surveillance system, and marked, "Please close the door firmly behind you." *Id.* The sergeant saw Medeiros peer into the school through the glass portion of the door, grab the door handle, and "attempt[] to open it." *Id.* Due to the locking mechanism, he was unable to open the door. *Id.*

After failing to open the first door, Medeiros went to another entrance in the back of the school building. *Id.* Sergeant Fernandes lost sight of him for approximately thirty seconds while he called for assistance from a marked unit. *Id.* at 134. He next saw Medeiros walking on the sidewalk adjacent to a third entrance to the school, heading toward a nearby bus stop. *Id.*

Sergeant Fernandes was suspicious of Medeiros's behavior, and approached Medeiros while he was at the bus stop. *Id.* The sergeant identified himself as a police officer and twice asked Medeiros why he had tried to enter the school. *Id.* Medeiros did not give a direct answer. *Id.* When asked what he was doing in the area, he informed the sergeant that he had taken a bus from his home to Melville Towers, located in downtown New Bedford, and then had gone to a store north of the school to buy cigarettes. *Id.* The sergeant, who was familiar with the area and knew there was a store adjacent to Melville Towers that sold cigarettes, asked him why he would walk away from the Towers to purchase cigarettes. *Id.* Medeiros did not respond. *Id.* Once the marked unit arrived, Sergeant Fernandes ran a check on Medeiros and learned that he was a registered level-three sex offender. *Id.* Sergeant Fernandes notified the school of the incident and applied for a criminal complaint to issue for one count of trespass. *Id.*

Medeiros was later served with a written notice of probation surrender alleging that he had violated the special condition of probation to "have no involvement with minors without responsible adult supervision." *Id.* The notice also alleged that Medeiros failed to obey a New

Bedford ordinance prohibiting sex offenders from entering "child safety zones" (as defined in the ordinance), in violation of the condition of probation that he obey local, state, and federal laws. *Id.* An initial probation surrender hearing was scheduled for January 2, 2014, in Massachusetts Superior Court, and the violation hearing was held across a series of dates in 2014 and 2015. *Id.*

On October 10, 2014, Medeiros testified at the probation violation hearing. *Id.* at 135. He admitted to knowing the building was a school but claimed that he had approached the school to inquire about a food pantry that was sponsored by a nearby church. *Id.* Superior Court Justice Renee P. Dupuis, who presided over the hearing, did not credit Medeiros's testimony, and on October 16, 2014, found him to be in violation of the terms of his probation. *Id.* On August 12, 2015, Justice Dupuis revoked Medeiros's probation and sentenced him to ten to fourteen years in state prison on the underlying conviction of dissemination of child pornography, Mass. Gen. Laws ch. 272, § 29B(a). *Id.*

Medeiros filed an appeal with the Massachusetts Appeals Court. *Id.* He contended that the trial judge abused her discretion in finding that his conduct violated the probation condition barring involvement with minors without responsible adult supervision. *Id.* Alternatively, he asserted that he lacked sufficient notice of the scope of that condition. *Id.* On April 4, 2019, the Appeals Court affirmed the trial court's conviction and subsequent re-sentencing. *Id.* at 138. The court viewed Medeiros's claims as presenting overlapping questions. *Id.* at 135. It reasoned that conditions of probation should be read in a "commonsense way," and "keeping in mind the defendant's background—that of a level three sex offender with a history of preying on children—his efforts to surreptitiously enter a grammar school building during classroom hours can be understood as involving the children inside." *Id.* at 138. Thus, the court found that the trial judge did not abuse her discretion in ruling that in these circumstances, Medeiros violated

his condition of probation to have "no involvement with minors without responsible adult supervision." *Id.*

Justice Wendlandt, joined by Justice Milkey, dissented on the ground that the circumstances demonstrated an attempted probation violation, not an actual one. *Id.* at 139. The dissent contended that the two questions raised on appeal—(1) the scope of conduct prohibited by a probation condition, and (2) whether the condition provided fair notice of the conduct proscribed—should be considered separately under the circumstances. *Id.* The dissent agreed with the majority that Medeiros had fair notice of the conduct proscribed by the probation condition and yet still attempted to violate it. *Id.* Nevertheless, Medeiros's attempt failed. *Id.* The locked door prevented him from being seen by a minor, seeing a minor, or having any encounter with a minor. *Id.* Therefore, while there was evidence of the necessary *mens rea*, the Commonwealth did not demonstrate the necessary *actus reus* to prove he violated the terms of his probation. *Id.*

The dissent also found that determining the scope of a condition of probation was a matter of law, and therefore should have given rise to a *de novo* review on appeal. *Id.* The dissent disagreed with the majority's broad reading of "involvement with minors," and emphasized that "at minimum its plain meaning requires some degree of engagement or interaction with a minor." *Id.* at 140. Therefore, because Medeiros was thwarted by a locked door, his conduct did not fall within the plain meaning of the condition. *Id.* at 140-41.

On April 22, 2019, Medeiros filed an application for leave to obtain further appellate review ("ALOFAR"). (Resp. Ex. 3, at 1). He first alleged that the probation condition was unconstitutionally vague, and he did not have sufficient notice that his conduct would fall within its parameters. *Id.* at 5, 10. He also alleged that his conduct, at most, was merely an attempted

violation of the condition, and that the trial judge had abused her discretion in finding that his actions constituted a violation of his probation. *Id.* at 5, 11-12. With respect to the second argument, he requested that the court adopt the dissenting opinion of Justice Wendlandt. *Id.* at 5, 11-12.

On June 27, 2019, the Supreme Judicial Court denied the application. *Commonwealth v. Medeiros*, 482 Mass. 1105 (2019).

On January 13, 2020, Medeiros filed the present petition. He contends that the terms of his probation were constitutionally infirm and that the trial judge unconstitutionally abused her discretion in finding that his actions constituted a violation of his probation.

Respondent moved to dismiss on February 5, 2020. Respondent contended that the Court should dismiss the petition because Medeiros has failed to exhaust his state court remedies, and, in the alternative, that the second claim should be dismissed for lack of subject-matter jurisdiction because it does not state a cognizable violation of federal law or the Constitution.

On September 18, 2020, the Court granted respondent's Motion to Dismiss in part, finding that Medeiros has exhausted his first ground (alleging a constitutionally deficient condition of probation) but not his second (alleging abuse of discretion in finding petitioner's conduct to be a violation of probation). Accordingly, the Court ordered that the petition be dismissed without prejudice unless, within 30 days, Medeiros filed a written election with the Court requesting dismissal of the unexhausted claim in his petition so that he could proceed on the merits of the exhausted claim.

On October 7, 2020, Medeiros filed an amended memorandum of law in support of his habeas petition. The amended memorandum differs from the original memorandum in three ways: first, the second ground for relief (that the trial judge abused her discretion in finding that

6

petitioner violated the terms of his probation) has been renamed from "2" to "1(a)"; second, all references to due process rights and the United States Constitution have been eliminated from the analysis portion of the second ground for relief; and third, the petition now requests discovery and an evidentiary hearing. The amended petition now asserts exhausted claims, which mirror the claims of petitioner's state-court petition.

On October 20, 2020, the Court construed Medeiros's amended memorandum to be an election that he wishes to proceed on the merits of the exhausted claim(s) of his habeas petition. The Court ordered that respondent file a response to the petition in order to consider the claim on its merits.

## II.     Analysis

### A.     Standard of Review

Federal habeas corpus review of a claim previously adjudicated on the merits by the state courts is both limited and highly deferential. *Harrington v. Richter*, 562 U.S. 86 (2011); *Renico v. Lett*, 559 U.S. 766, 772-73 (2010); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). A federal court may not grant a writ of habeas corpus on a claim that was adjudicated on the merits in state court unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

#### 1.     "Contrary to" or "Unreasonable Application" of Federal Law

Petitioner bears the burden of showing that the state court decision was contrary to or involved an unreasonable application of clearly established law. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing *Woodford*, 537 U.S. at 25).

7

A state-court decision is "contrary to" clearly established federal law if it (1) applies a rule that contradicts the governing law set forth in the court's cases or (2) resolves a case differently from the court on a set of materially indistinguishable facts. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). In either scenario, the state-court decision must be "substantially different," "diametrically different," "opposite in character or nature," or "mutually opposed" to clearly established Supreme Court precedent. *Williams*, 529 U.S. at 405.

A state-court decision involves an "unreasonable application" of federal law if the state court identified the correct governing legal principle from the Supreme Court's decisions, but applied it in an objectively unreasonable manner. *See Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (citing *Williams*, 529 U.S. at 409). The Supreme Court has cautioned that "[a]n unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, 529 U.S. at 365. The state court's application of federal law must be "more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75 (citing *Williams*, 529 U.S. at 409, 410, 412); *see also Kibbe v. DuBois*, 269 F.3d 26, 35 (1st Cir.2001); *Teti v. Bender*, 507 F.3d 50, 57 (1st Cir.2007) ("A decision can still be reasonable even if the reviewing court thinks it is wrong; 'unreasonable' here means something more than incorrect or erroneous."). It is not "unreasonable" unless the petitioner has "show[n] that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 102-03. If it is "a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir.2002).

"If th[ese] standard[s] [are] difficult to meet, that is because [they] w[ere] meant to be." *Id.* at 104.  They "reflect[ ] the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.*  Finally, even when a state court applies a standard that is contrary to clearly established federal law, a petitioner still is not automatically entitled to relief.  Instead, the petitioner must demonstrate that he "'is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Aspen v. Bissonnette*, 480 F.3d 571, 576 (1st Cir. 2007) (quoting 28 U.S.C. § 2254).  "This means that a petitioner must show that his underlying detention is unlawful and not just that the state court employed faulty reasoning in his case."  *Id.*  The petitioner must demonstrate "that Supreme Court precedent requires an *outcome* contrary to that reached by the relevant state court."  *Id.* (quoting, with added emphasis, *O'Brien v. Dubois*, 145 F.3d 16, 24-25 (1st Cir. 1998), *abrogated on other grounds*, *McCambridge v. Hall*, 303 F.3d 24 (1st Cir. 2002) (en banc)).

### B.     The First Claim Does Not Establish a Violation of Federal Law

Petitioner contends that the Appeals Court unreasonably concluded that his probation condition complied with the requirements of due process[2].  The starting point for analysis is to identify the clearly established federal law, as determined by the Supreme Court of the United States, that governs the petitioner's claims.  *See Marshall v. Rodgers*, 569 U.S. 58, 61 (2013). "Clearly established federal law" refers to holdings, not dicta.  *Likely v. Ruane*, 642 F.3d 99, 102 (1st Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  If the federal law is not clearly established, "then per force the state court decision cannot be either contrary to or an unreasonable application of clearly established federal law."  *Likely*, 642 F.3d at 102 (citing

---

[2] As noted, the probation condition at issue was the prohibition of "involvement with minor children without responsible adult supervision."

9

*Wright v. Van Patten*, 552 U.S. 120, 126 (2008); *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

Here, petitioner relies on state law to support his claim that probation conditions must meet the same due process requirements of "fair notice" as compared to statutes. He does not cite to any clearly established federal law that controls his claim. And the Supreme Court case on which petitioner indirectly relies is not "clearly established federal law;" it is a footnote, not the holding of the case. *See United States v. Bobo*, 419 F.3d 1264, 1268-1269 (11th Cir. 2005) ("[C]ourts generally do not make a habit of hiding away important holdings in afterthought footnotes or surrounding them with . . . noncommittal musings").[3]

Moreover, the Appeals Court reasonably found that the condition restricting "involvement with minor children" gave petitioner sufficient notice of what conduct was prohibited. *See Johnson v. United States*, 576 U.S 591, 595 (2015). Petitioner contends that he believed the probation condition only prohibited direct physical involvement with children. In upholding the probation revocation, the Appeals Court noted that "fair warning is not to be confused with the fullest, or most pertinacious, warning imaginable." *Medeiros*, 95 Mass. App. Ct. at 136 (quoting *United States v. Gallo*, 20 F.3d 7, 12 (1st Cir. 1994)). In the absence of relevant Supreme Court law, the Appeals Court reasonably held that "involvement" is a broad word and includes actions that implicate minors' safety. *Medeiros*, 95 Mass. App. Ct. 137. And children's safety was implicated in petitioner's efforts to enter the school while classes were in session.

---

[3] Petitioner cites to *Commonwealth v. Powers*, 420 Mass. 410, 421 (1996), which cites to *Griffin v. Wisconsin*, 483 U.S. 868, 875-876 n.3 (1987). The footnote in *Griffin* noted that if the regulation had restricted the probationer's movements, it would have to be interpreted to provide adequate notice. *Griffin* does not require that ordinary, non-regulation probation conditions are subject to the same due process notice requirements. In addition, the footnote was not the holding of the case, and therefore not "clearly established federal law."

### C. The Second Claim Does Not Assert a Cognizable Violation of Federal Law or the Constitution

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 67-68. If habeas petitioners seek review of a state court's ruling on matters of state law, they may succeed where the state-law decision itself creates a constitutional violation. *See Sanna v. Dipaolo*, 265 F.3d 1, 11 (1st Cir. 2001) ("Federal habeas relief cannot be granted merely because a state court errs in its application of state law . . . . But a state law or practice that betrays a fundamental principle of justice offends the Due Process Clause."). Accordingly, the standard for federal habeas corpus relief is a formidable hurdle. *See Coningford v. Rhode Island*, 640 F.3d 478, 485 (1st Cir. 2011) (denying relief where state court's approval of introduction of prior bad acts evidence, whether or not a correct ruling, "was well within universe of plausible evidentiary rulings").

Petitioner's second claim alleges that the state court misinterpreted and misapplied the probation condition forbidding him from "involvement with minors without responsible adult supervision." In effect, he contends that the term "involvement" should be construed to require interaction. However, the correct construction of a term of probation is purely a state-law issue. Because he failed to address any defects in the state court's interpretation and application of state law that could rise to the level of a constitutional violation, his second claim amounts to nothing more than a pure state-law claim. *Rehkopf v. Berghuis*, 2011 WL 5599019, at *4 (W.D. Mich. Oct. 27, 2011) ("[P]etitioner cannot seek federal habeas relief based upon his disagreement with the state court's construction of state-issued probation conditions . . . .").

Moreover, to the extent that petitioner claims that his actions constituted merely an

11

"attempt" to interact with minors, this claim is procedurally defaulted.  "It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'"  *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  For example, if a petitioner fails to follow state procedural rules, and a state court based its decision on that failure, then that constitutes an independent and adequate state ground for denying federal review.  *Cone*, 556 U.S. at 465.  Here, the Appeals Court noted that petitioner's argument was presented for the first time at oral argument and therefore was not properly before the court.  *Medeiros*, 95 Mass. App. Ct. at 142 n.9.

## III.     Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

**So Ordered.**

/s/  F. Dennis Saylor IV
F. Dennis Saylor IV
Dated: December 13, 2021                                             Chief Judge, United States District Court